Chief JuM.ioc Boyle
doth oral the Opinion of the Court.
•This was an action of detinue for four slaves, Carolina ami hor three children. The general issue was pleaded, with leave to give the special matter in evidence, and on the trial in the circuit court, the evidence produced on the part of the plaimilf; established, or at least conduced to establish, the following facts
in IT'S/'. Fetor ¿lord Ren. of Stafford County. ‘Virginio, departed this life, having previously made his will, which was afterwards duly admitted to record in the court of that county, and contains the following clauses:
“I leave to my son Peter fiord, during his natural life, the use of the plantation whereon I now live, with all tiie rest of the land on the same side of the Diain road, also, one negro boy named Cupid; and at his decease l give and bequeath all the aforesaid land and negro, together with all the negroes that may fall to him in dividing my estate and their increase, to be, equally divided among his seven children, vis; Sarah llord, Whitly llord, Margaret llord. Reuben fiord. Elizabeth Hord, Anka llord, and Agatha Hord, and their heirs forever.’-’
“ítem, I give, to my four children, Killis Hord, Peter Herd, Antheret llord, and Sarah llord, all of that part of my brothel’ Ambrose Hordes estate that foil to me by his last will and testament; that part received to stand as it was settled, the 4th day of January, 178(1, at my house; and whereas there are suits depending for that estate of my brother Ambrose Hord, deceased, whatever may be recovered for the said estate, I give my part to be equally divided amongst my children, Killis Hord, Peter llord, Antheret Hord, and Sarah Hord, to them and they,heirs forever.”
Gill in oquiia by the <iovi~' prohibit tim" lonant for life ^‘naVomoviii > y™ -from the bond’requir-. ei!-
i,>aoli) appii„ rent inert-' denci''
justnuniwif, for non suit’ for Uons
The will then proceeds, after directing the debts of the testator to be paid, to give all the residue of ins estate to his tour rhilavc» and thou* heirs, appoints them his executors, all of whom qualified.
Caroline was one, or the deseendant of one of those slaves which fell to Peter Hord Sen. under the will of his brother Ambrose, and haring come, to the possession of his son Peter Hord. he claimed the fee simple in her, in virtue of the second clause above recited of his father’s will.'
In 1305, two of liis seven children named in the first clause of the will before recited having departed this life unmarried and without issue, the survivors with their husbands, who are the plaintiffs in this suit, filed their bill in chancery in Stafford county, Virginia, against their father, setting up their claim to Caroline- and other slaves, under the will of their grand father, after the death of their father, and suggesting that he was about to sell or remove them out of the state, prayed for, and obtained, an injunction. To this bill their father answerd, claiming the slaves in fe.e in his own right under the Will of the testator, and on a final hearing the court decreed, that he should be’perpetually enjoined from removing the slaves out of the state, and that lie should give bond and security for the forth coming and delivery of them to the plaintiff, when their right should accrue.
In 1812, on the marriage of his daughter by aseeond wife, Caroline was delivered by tbc father of the plaintiff to his son-in-law, by whom, or some one claiming under him, she was removed to Kentucky, and sold to the husband of the defendant, in whose possession she and her three children were at the commencement of this suit.
Peter Hord, the father of the plaintiff’s died $n 1820, and this suit was commenced in 1824.
On this state of the cause in substance, the circuit court on the motion of the defendant, instructed the jury to find as in case of a non suit, to which the plaintiff’s excepted, and a verdict and judgment baving been rendered against them, they have appealed to this court.
AVIicto instructions for nonsuit maybe given and where not.
Deviso to Peter for lifr, of ,specí¡ie<I properly, together wiih all (lie negroes that may falPto him in dividing testator’s estate, With remandor <o Peter’s children by name; those child ron take the remainder in Peter’s part of slaves devised undivided io testator :uid others by one before dead, &, by an after oíanse in ibis will, devised to Voter his iirothers and sister?
It is obvious that the instruction given by the rirruit court to the jury, could bo proper only upon the the supposition that the case made out by the plaintiffs did not shew them to have such a right to the slaves in question as would entitle them to recover in this action; but on what supposed defect in their title the motion to instruct, or the instruction given by that court, was predicated, is not stated in the. record. We are, however, furnished with several objections to their title by the argument on the part of the defendant in (his court, and such of these as are deemed material to tire interest of the parties, we will proceed to examine.
In the first place, it is contended, that as the first clause in the will of Peter Hord Sen. only gives to tiie plaintiffs the remainder after the death of their father, in the slaves, which might fall to him in the division of the testator’s estate, it does not apply to the slaves which were given, by the second clause; the estate thereby bequeathed, being distinguished by the testator as part of his brother Ambrose fiord’s estate, and as Caroline, was one of the slaves which passed by that clause to the father of the plaintiffs, it is infere,d that they cannot bo entitled to the remainder in her or her children.
This argument, though plausible, is not solid. The first clause of the will gives to the seven children of Peter, tfye soil of the testator, the remainder after their father’s death in all the negroes which might fall to him in the division of thq testator’s estate; and, undoubtedly, the slaves which the testator had acquired under hi.^ brother Ambrose’s^ will, were as much and as poroperiy his estate as those were which he had acquired in any other way. ' Indeed, in the, very act of bequeathing' them by his he, íreáts them as his estate, and the manifest purpose of refering to the estate of his brother, in the second clause of the will, was not thereby to pass his brother’s estate, but describe that' part of his own estate which lie intended thereby to bequeath.
The slaves, therefore, given in the second clause of the will to his son Peter and his three other children., being slaves which must fall in part to Peter,. *279 on Uie division (of liis estate, come literally within the import of the preceding clause, whereby the remainder over, after the death of Peter, was given to his seven children.
Where (here aro repugnant clauses in a will the latter shall prevail,— ,
Out—
Repugnance in different clauses of the will shall not be made out by the ieclinioal mean, ing oftenn?.-
~For—
Where n consistent intention appears in the contest it must prevail, audit shall be supposed the testator employ, ed the word0, whose strict signification would piake a repugnance, in an improper sense.
But, secondly, it is contended that the second clause in the will gives to Peter and the other children of the testator, a fee simple,in the estate thereby devised, and that being in this respect repugnant to the preceding clause, must prevail over it.
Tiie principle that where therb are two devises in a will so utterly repugnant that both cannot have effect the-latter must prevail may he conceded.
But we' cannot admit that there is such a repugnance in the two clauses of the will in this case. Had the estate acquired by the testator, under the will of his brother been expressly devised to Peter and his other children and to their heirs,, we would, notwithstanding, have thought as to Peter’s portion of it, that it should be taken subject to the devise over to his children. It is true that a gift or grant, whether by deed or will, to a man and his heirs, according to the technical import of the words, will create an estate of inheritance. But in wills, words are not always construed according to their technical import-
Where the intention is manifest, even technical words must yield to that so far as is necessary to give it effect, and in this case it,is dearly tiie inten-v lion, by the first clause of tiie will, to give the remainder to Peter’s seven children in all the slaves which should' come to him in the division of the testator’s estate. But this intention would have no effect if the demise over to the seven children were to be construed not to apply to the slaves includedin the second clause "of the will, mefely because tiiey were given to the devisees and their heirs; for the residuary clause expressly gives all the residue of the estate to the same devisees, and their heirs, and beside these there is no other clause in the will under which the testator’s son Peter could take any slaves winch would be subject to the devise to his children in remainder. Had the-teatator, therefore, in the second clause of his will expressly given the estate thereby bequeathed, to his sort Peter and his *280 other children and their heirs, it would, we apprehend, have been more rational to suppose that he had used the words, and their heirs, inaccurately, so far as they related to Peter’s part, than that his intention that Peter’s children should take in remainder, should be entirely defeated.
Construction of the will and facts •n-oved.
!0e\i=e over after a life estate vests (bn dc’i"oes in remainder with an immediate interest, anti, the osfate of one of them dying intestate passes to his representativo.!', hot. the survivors.
Statute ubolishing thejiis accresccndi — As to tenants in common, it never applied.
*280 But the truth is, the testator has not given the slaves which passed by the second clause of the will expressly to tiie devisees and their heirs. That clause, by adverting to it, will be seen to consist of two distinct branches, the first of which relates to that part of the estate of the testator’s brother which he had received, and the second to that which was in suit, and it is only the latter which he expressly gives to the devisees and their heirs, while he gives the former without any words of perpetuity,' and it is inferable that the slaves, including Caroline, which came to Peter, in virtue of the second clause of the will, was of that part of the estate of the testator’s brother which he‘had received, in fact, there is no evidence to show that any part of the estate in suit was over recovered. There is, there-' fore, nothing in the second clause of the wilL as to the slaves which passed thereby to Peter expressly inconsistent.vvilh the. devise in the preceding clause to his children in remainder.
in the third place- it is contended that, as two of the seven children to whom the. devise over in remainder was made had died, their interest in (he slaves did not accrue to the survivors, but went to the representa'ives of the deceased, who ought, therefore, to have, joined in the action
As the devise was to the seven chi Wren by name, it is very clear that they took an immediate vested interest, and that the shares of'the deceased children went to their representatives, and did not. accrue to the survivors. As the will directed (he slaves to he equally divided amongst these children, they must have taken, not as joint tenants, but as tenants in common, and at common law. where one of several tenants in common «lied, his interest went to his representatives, and did riot, accrue to the survivors.
But even supposing the children to have taken as *281 joint tenaais, the interest of the deceased children would not have survived to the survivors, for prior to making the will the statute of Virginia had passed, abolishing the jus accr'escendi between joint tenants, and placing them upon tlic footing of tenants in coalmen; so that whether the children be considered as tenants in common, or joint tenants» the beneficial interest of those who died must have gone to their representatives.
Where one of several co-tenants is possessed oí the thing at the death .of another, if it bo afterwards injured .or wrongfully detained, thte representatives o'f th’e deceased iuay join wilh.Uic survivors in the action.
Where the cause of action accrued prior to the death, the survivors only-must sue.
This the rule as to the action, tho’ tho interest may not so sur-’ vive.
But it docs not follow that the right to join in the action with the survivors belonged to them. For although there arc cases in which the representatives of the deceased co-tenants may lawfully join in an action with the survivors, yet.there are others in which they most evidently cannot do so. Their right to join, or not to join, in an action depends upon the question, whether the thing of which they seek a recovery has been in their possession, or is a thing which is in action only-. If a thing be in the possession of either of the co-tenants at the time, of the death of one of them, the representative of the dece'ased tenant would, in that case, be jointly possessed with the survivor, ami for any privation of that possession, or injury done to it, they might and ought to join in an action with the survivor.
Bt if the thing he in action only, as if there be a debt due to two or more, one of whom dies, or if a specific chattel held in co-tenancy be taken by a stranger, and possessed adversely to him. at the time of the death of one of the co-tenants, the representatives of the deceased cannot join with the survivor for its recovery.
Thus, although at common law there was no survivorship of their beneficial interest between partners in trade, yet it has been held that the right of action survived, and that, consequently, the executor or administrator of the deceased partner cannot join with the survivor, for the .recovery of a debt due to them, 1 Ld. Ray. 340. Bo .to an action of trover brought by the survivor of three partners in trade, it cannot be objected that the right of survivor-ship did not exist for the legal right of action survives, though the beneficial interest may not, 1 Cliitty 55.
And since the statute placing joint tenants upon ' *282 the footing, in this respect, of tenants in common, the same doctrine has been applied to debts or dc-jointly due to persons not partners in trade, Hard. 480.
Where before the death of iffe of*slaves part ofthe ’ remainderafterwards at tho termination of the tat'e^Uie1 eS" slaves are held adverse-i.. .u they are dioses in action, and detinue for them must be in the names of the surving remaindermen.
In Virginia devisees of slaves could notsoe till executor assented.
of seven! ex-dr visee of^ the partioular estate is'sufficieMto vest both that and the rcmam erover. Asseritóf one
fenantofthe particular estate being one of several executors, his election to hold as devisee vests the estate in both him 0,nd the remainder-man.
*282 Now, in this case, with respect to the right of the children who were devisees in remainder after the death of their father, Peter Hord, the slaves in ques-^on must, we conceive, be considered as things in action, and not in possession; for although at the time of the death of the deceased children, Caroline was *n ^ie possession of their father, whose possession, as he was tenant for life, could not be treated as adverse to their tifie, yetas their right to the P0SSPSS*°n did not commence until the death of their father, and Caroline and her children were then in the adverse possession of another, if is plain that they mua$ jj6 considered as things in action merely, and the right of action, therefore, must, according to the distinction we have before mentioned, have survived to the surviving children, and consequently, the action was properly brought in their names alone.
But, in the fourth piare, it is contended that, the slaves in Virginia were assets in the hands of the executors of the testator, and that without their assent, of which it is alleged there is no proof in the cause, the devisees in remainder could bring no action for their recovery. It is true that the slaves were assets in the hands of the executors, and that without their assent, the devisees could maintain no action at law for their recovery.
But we cannot admit that there is no evidence of the assent of the executors to the devise of the slaves.
Their assent that the devisee of the particular estate should take by the devise is a sufficient assent f0 the devise in remainder, and such an assent given by at|y one of the executors would have the same effect.
fe ven where the legacy is given to several executors>election of one of them to take as legatee, will, without the assent of the others, vest in him, in his invidual right, his share of the thing bequeathed; af;(j j{) casB the evidence, we think, is sufficient to established the election of Peter fiord, the son of *283 the testator, who was one of the executors, to take the slaves in his own right; for in his answer to the bill filed by the plaintiffs in Virginia, in 1805, he does not pretend to hold the slaves in his right of executor, but claims them ih his own right, which in itself amounts to an election by him to hqldthemas devisee, and not as executor.
Where one executor is devisee of slaves in common with the-other fixecu-' tors, his holding pnrl'of the slaves in severalty for many years is evidence that there was a division and. that all as. seated.
Crittenden for appellants;. Mayes for appellee»
But even the assent of the other executors may, we apprehend, be fairly infered from the evidence in the case. This inference is justified by the circumstance that Peter Hord, the father of the plaintiffs, held a part of the slaves jointly devised to lam and the other executors, in severalty, and was permitted by them to claim and treat them as bis own during bis life, without any,claim on their part ever having been set up to them. This could not, in all reasonable probability, have happened unless the executors had made a division and allotment of the slaves among themselves, and such a division and allotment created a strong presumption of their election to take and hold, each his own shave in his own right, and not as executor.
Other grounds were taken in the argument in sup, port of the instruction given by the circuit court to the jury, but these grounds, although ingenious and plausible, derive all their plausibility from the supposed want of assent of the ex.ecutors to the devise, and as that supposition cannot.be admitted to he correct, it seems, unnecessary to examine them». The circuit court, therefore, erred in instructing the jury as in case of a non suit.
The judgment must be reversed, with costs, and the cause be remanded that the verdict may be set aside, and a.new trial had, not inconsistent with this, opinion.